[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2007
THOMAS K. KAHN
CLERK

No. 06-16344
Non-Argument Calendar
_____

D. C. Docket No. 06-80074-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN ALLEN DUPREE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 11, 2007)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

John Allen Dupree appeals his conviction for bank robbery, a violation of 18

U.S.C. § 2113(a). On appeal, Dupree argues that the district court erred on the

following grounds: (1) by admitting, pursuant to Rule 404(b) of the Federal Rules of Evidence, evidence of a 1996 bank robbery to which he pled guilty, for the purpose of establishing identity; (2) by admitting the testimony of both a U.S. Marshal and an investigating detective, neither of whom were present at the scene of the robbery, in violation of Rule 602 of the Federal Rules of Evidence; (3) by admitting evidence about an out-of-state witness's identification of Dupree in a photo lineup, in violation of his rights under the Confrontation Clause; and (4) by miscalculating the restitution amount. The government concedes error on the last issue. After careful review of the record and the parties' briefs, we vacate and remand for the limited purpose of correcting a $43 discrepancy in the restitution order. In all other respects, we affirm.

We review the district court's decision to admit evidence of prior crimes under Rule 404(b) for a clear abuse of discretion. United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir. 1994).

We normally review the district court's evidentiary rulings for an abuse of discretion. United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006), cert. denied, 127 S. Ct. 990 (2007). However, when an appellant fails to object below on the grounds asserted on appeal, we review for plain error only. See United

States v. Gresham, 325 F.3d 1262, 1265 (11th Cir. 2003).[1]  Under the plain error

standard, Dupree "must show that: (1) an error occurred; (2) the error was plain;

(3) it affected his substantial rights; and (4) it seriously affected the fairness of the

judicial proceedings."  See Gresham, 325 F.3d at 1265.  An error cannot be plain

unless the error is "clear under current law." United States v. Aguillard, 217 F.3d

1319, 1321 (11th Cir. 2000).

We review de novo whether a defendant suffered a deprivation of his rights

under the Confrontation Clause; however, a Confrontation Clause violation does

not require remand if the error is harmless "beyond a reasonable doubt." See

United States v. Mills, 138 F.3d 928, 937-38 (11th Cir. 1998).

The relevant facts are these.  On May 6, 2006, Dupree was indicted for

robbing a bank that had deposits insured by the Federal Deposit Insurance

Corporation, in violation of 18 U.S.C. § 2113(a).  Prior to trial, the government

disclosed its intention to present evidence, pursuant to Fed. R. Evid. 404(b), that

---

[1]In order to preserve an issue for appeal, a defendant must "raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought"; however, "[a] general objection or an objection on other grounds will not suffice." United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986).  In his second issue, Dupree asserts error based on Rule 602 and based on improper bolstering due to a witness's identification as a law enforcement officer.  Although he objected at trial to the testimony that is at issue in claim two, he did not assert error based on Rule 602.  Therefore, we review that portion of his argument for plain error only.  As to his claim of improper bolstering, we discern no abuse of discretion.

3

Dupree had committed a prior bank robbery in 1986 and three prior bank robberies in 1996.

At trial, Dawn Kowalak, Bank of America's regional manager of corporate security, testified that she investigated a January 13, 2006 incident during which one of the bank's branches was robbed, and determined that $2,157 was taken. Bank teller Karen Morales testified that, on that date, a man came to her window, and, as was her custom, she greeted him and looked at his face. She testified that the man then pointed down at a deposit slip, on which he had written "give me the money, no die [sic] pack, no paint . . . or I blow your head off, . . . 100's, 50's and 20's." She gave him the money from her teller station, and, after he left, she told her assistant manager that she had been robbed. In court, she identified Dupree as the man who had robbed her. The government entered into evidence the deposit slip that Morales had described, as well as surveillance footage from the robbery. As the footage was presented, Morales explained that it depicted Dupree going toward a kiosk at which one could obtain deposit slips, similar to the one presented into evidence by the government, and other bank documents.

Morales identified the robber in still photographs and surveillance video taken on the day of the robbery. She testified that she was shocked by the robbery and remembered it "like it happened yesterday." She also described how, about a

month after the robbery, she positively identified Dupree's photo among a group of photos of people who "look[ed] like the person who robbed me." The group of photos was introduced into evidence. On cross-examination, Morales testified that, when meeting with police, she described the robber as a black male, who was clean-shaven and slightly shorter than her (around five feet, six inches tall), and was wearing a hat, a blue jacket, black sweat pants, and white socks.

Dupree objected to the testimony of the next witness, Nancy Lynn Navitsky, a U.S. Marshals Service Deputy. He argued that Deputy Navitsky should not be allowed to say that she had seen the defendant while working in her capacity as a law enforcement officer, or as part of a "fugitive squad." In response, the government explained that Deputy Navitsky was familiar with Dupree because she had been preparing an arrest warrant for him on a probation violation, and argued that she should be able to identify her occupation because: (1) the jury would find it odd if she did not identify her occupation, while other witnesses had; (2) part of her testimony regarded her special training in identification and naming her occupation would help to explain why she had that training; and (3) her testimony was necessary to explain how Dupree ultimately became a suspect.

The district court ruled that Deputy Navitsky could identify her occupation, describe her training, and testify that she recognized Dupree from a photograph,

5

but she could not testify that she had seen Dupree's photograph while preparing an arrest file for him or working on a fugitive squad. The court characterized Deputy Navitksy's testimony as "lay opinion," because it was based on her senses and perception, but also found that Deputy Navitsky's testimony about her training in identification techniques was permissible to help explain how she recognized Dupree. The district court further explained that, in addition to providing evidence that Dupree was the robber, Deputy Navitsky's testimony provided an "explanatory bridge" to explain how local police came into contact with Dupree after the robbery. Before Deputy Navitsky testified, the district court instructed the jurors that, although they would hear testimony that a law enforcement officer possessed a photograph of Dupree, they should not speculate as to why she possessed the photograph, as Dupree was only on trial for the instant offense.

Deputy Navitsky then testified that, as part of her work for the U.S. Marshals Service, she had received training in the identification of individuals, as part of a 14-week criminal investigation school. She testified that, one evening, she was watching a local news broadcast about the January 13th robbery, and, upon seeing the surveillance footage, she immediately recognized Dupree as the robber, based on a photo she had recently seen. She subsequently reported her identification of Dupree to the Palm Beach County Sheriff's Office ("PBCSO").

6

Jeff Weissman, a PBCSO detective, testified that, as part of his investigation of the robbery, he distributed a news release, in which he included still images taken from the surveillance video of the robbery. Deputy Navitsky subsequently contacted him and told him that she believed that Dupree was the robber and that she knew where to find Dupree. Thereafter, Detective Weissman personally met with Dupree and agreed that he was the person depicted in the surveillance photographs. Detective Weissman testified that, after his conversation with Deputy Navitsky, he prepared a photo lineup, which included Dupree's photo, and showed the lineup to Frank LaCosta, another bank employee, who positively identified Dupree. When the government moved to introduce the lineup photos into evidence, the defense objected on the ground that it violated Dupree's confrontation rights. The district court sustained the objection.

Before the government called its next witness, the district court heard argument on the admissibility, under Rule 404(b), of evidence of Dupree's four prior robberies. The government argued that identity was the primary issue at trial and that, because the previous robberies were highly similar to the present robbery, the previous crimes were admissible to show identity. More specifically, the government argued, in each robbery, the robber walked into a bank, unarmed, wearing a baseball cap, went to the check-writing station, wrote out a note on a

7

bank document, got in line, and passed the note to the teller, using similar language each time. Dupree responded that the prejudice from such evidence would outweigh its weak probative value, and that the past robberies were "too generic," since they involved behavior common to many bank robberies.

The district court found a "remarkabl[e]" similarity among the written notes in each case, especially the shape of the letter "F"'s on each note, and that in the robberies, the robber wore a baseball hat, used a bank document for the note, and carried the money out of the bank in his hands. The district court also recognized the need to "take appropriate steps to attempt to modify the prejudicial impact" of the testimony. Thus, the court ruled that the government could introduce evidence of only one of the four past robberies, reasoning that the jury, if it heard about all of them, might be "tempted to give up its responsibility" to focus on the instant robbery, and instead convict Dupree on the basis that, if he "commit[ted] multiple bank robberies, he probably did this one, too."

Immediately prior to the admission of evidence of Dupree's previous robbery, the district court instructed the jury that "it is a fundamental principle that somebody is only on trial for the crime that is charged in the indictment," and explained that it was admitting evidence of a previous robbery "only for the purpose of establishing the identity of . . . the person who committed the robbery

8

on January 13th, 2006." The district court further charged the jurors that they could consider the evidence only if they found that the past robberies and the robbery on trial were "so distinctive, . . . so idiosyncratic, . . . that you could find beyond a reasonable doubt that the same person committed both acts." Moreover, the court instructed:

> [i]t would be 100 percent wrong if the jury just said, well, here is a prior bank robbery. If he did it before, he probably did it here. That would be terrible. This evidence cannot be used for that purpose, and you really need to consciously be aware of that.

The district judge continued to admonish the jury on this point, and then asked the jurors if they understood his instructions, and they stated "yes."

Martin Ruiz de Gamboa, a special agent for the Federal Bureau of Investigations, then testified that, in May 1996, he investigated a bank robbery, in which the perpetrator (later identified as Dupree), wearing a baseball cap, a t-shirt, and long pants, went into a bank and wrote a demand note on one of the bank's credit card applications. The demand note, which was submitted into evidence, read "I have a gun. If you value your life, pass the money. No die [sic] pack or alarm, pass the 20." Special Agent de Gamboa testified that it was "very unusual" for a bank robber to write out a demand note in the bank. He stated that "[in] ten years I don't think that personally I had more than maybe two cases in which stationary from the bank was used" for a robbery. Special Agent de Gamboa

9

further testified that during the 1996 robbery, Dupree had stood in line like a regular customer, passed the note to the teller, and walked out of the bank carrying the money. Dupree had pled guilty and was convicted of the May 1996 robbery. Special Agent de Gamboa made an in-court identification of Dupree as the May 1996 robber. The government introduced into evidence a certified copy of Dupree's 1996 robbery conviction.

Dupree testified in his own defense, the primary theory of which was misidentification. He stated that he had a beard and mustache at the time of the instant offense, contrary to Morales's testimony that the robber was clean-shaven. Dupree introduced a photograph of himself with a beard and mustache. He testified that the photo was taken when he was sent to jail on February 6, 2006. It was Dupree's theory that he could not have grown a full beard and mustache in the time between the January 13th robbery and his February 6th admission to jail, and thus that Morales had misidentified him as the robber. On cross-examination, he admitted that he pled guilty to the 1996 robbery, as well as to writing the note in that robbery, though he denied that the handwriting in the 2006 note looked like his.

During the government's rebuttal case, Maria Hogans testified that in May 1996, she worked as a teller at Barnett Bank, where she was robbed. She testified

10

that a man handed her a note, then told her that he wanted some money and that he had a gun. Hogan identified the note that the government previously had entered into evidence, confirming it was the note she had been given. She also testified that after the robbery, she had positively identified the robber in a photo lineup, and the photo that she identified as depicting the robber, with her initials below it, was submitted into evidence. The government also presented surveillance photographs from the 1996 robbery, in which a man, who Hogans identified as the robber, stood at a counter writing on a credit card application.

In its instructions to the jury regarding the evidence of Dupree's previous bank robbery, the district court again told the jury that it would be "terribly wrong" to convict Dupree of the present robbery based on the fact that he had committed a past robbery, and that the jury could convict Dupree based on that evidence only if it concluded that "the similarities [between the two robberies] are so striking that the jury can say beyond a reasonable doubt the same person committed both of these robberies, and that person is Mr. Dupree." The court admonished the jury that it was not permitted to use the evidence "for any other purpose."

The jury found Dupree guilty, as charged, of bank robbery. Based on his career-criminal classification, a base offense level of 32, and a criminal history

11

category VI, Dupree was sentenced to a 216-month term of imprisonment. He also was ordered to pay $2,200 in restitution. This appeal followed.

First, Dupree challenges the admission of evidence concerning the May 1996 robbery. Federal Rule of Evidence 404(b) provides: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Thus, Rule 404(b) permits the admission of prior-bad-acts evidence to show motive, preparation, knowledge, identity, and intent, as well as an ongoing scheme or plan. See United States v. Lehder-Rivas, 955 F.2d 1510, 1515-16 (11th Cir. 1992); United States v. Cross, 928 F.2d 1030, 1047-48 (11th Cir. 1991).

In reviewing 404(b) decisions, we apply a three-part test for admissibility of such evidence: (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act; and (3) the evidence must have probative value that is not substantially outweighed by undue prejudice. See Jernigan, 341 F.3d at 1280. "A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's

12

intent in the charged offense." United States v. Ramirez, 426 F.3d at 1344, 1354 (11th Cir. 2005). When using 404(b) evidence of a past crime to show identity, "the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi." United States v. Miller, 959 F.2d 1535, 1539 (11th Cir. 1992) (quotation omitted).

Here, Dupree concedes that the government met the first two criteria under Rule 404(b): (1) that the evidence was admitted to establish identity, which is a proper purpose, and (2) that the prior crime occurred. However, he argues, under the third prong, that the government did not show the probative value of the evidence outweighed its potential for prejudice. Dupree says that because there was no "unique signature" to his previous crime, the similarities between the robberies were insufficient to be substantially probative of his identity. He also argues that because the prior crime was "very similar" to the present robbery, the potential for prejudice was high.

The district court found many similarities between the perpetrators of both robberies, as well as a "remarkabl[e]" similarity among the written notes in each case, especially the shape of the letter "F"'s in each note. Moreover, the court noted the fact that the robber used a bank document each time -- a point that was

13

substantiated by the testimony of Special Agent de Gamboa, who testified that he had investigated between 40 and 50 bank robberies and found it was "very unusual" for a bank robber to write out a demand note in the bank. Indeed, as he put it, "[in] ten years I don't think that personally I had more than maybe two cases in which stationary from the bank was used" for a robbery. Moreover, de Gamboa testified that, in his experience, he had never before seen the exact combination of factors present in Dupree's robberies.

In addition to the district court's findings on the similarities of the robberies, the court issued clear, strict instructions to the jury to use the evidence only "for a very, very limited purpose," which was to allow the jury to decide whether the previous robbery and the instant one were "so distinctive, . . . so idiosyncratic, . . . that you could find beyond a reasonable doubt that the same person committed both acts." The district court issued these special instructions twice, once before the evidence was admitted at which point the jury verbally indicated that it understood the instruction, and again in the jury charge. Moreover, the court took the additional step of admitting evidence of only one of Dupree's past robberies, rather than the four that the government proposed, in order to mitigate the evidence's prejudicial impact. In short, the district court based its evidentiary ruling on similarities between the two crimes -- including, in particular, the

14

similarity of the handwriting on the notes and use of a bank document -- and not solely on similarities common to many robberies, as Dupree suggests. On this record, we discern no clear abuse of discretion in the district court's ruling.

Next, Dupree argues that the district court erred by admitting the testimony of both Deputy Navitsky and PBCSO Detective Weissman concerning photographs of Dupree and bank surveillance videos. Citing Rule 602 of the Federal Rules of Evidence, Dupree suggests the district court erred by allowing Navitsky and Weissman to testify that they had seen a photograph of Dupree and recognized him in surveillance photographs of the robbery, because neither of the two had "personal knowledge" of the robbery, as required by Rule 602 of the Federal Rules of Evidence.

Rule 602 states that a witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Rule 403 authorizes the exclusion of evidence whose probative value is "substantially outweighed by the danger of unfair prejudice. . . ." Fed. R. Evid. 403. In reviewing evidence under Rule 403, we view the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its under prejudicial value." United States v. Jernigan, 341 F.3d 1273, 1284 (11th Cir. 2003).

Because the record established that Deputy Navitsky and Detective Weissman had personal knowledge of Dupree's appearance, the district court did not err by admitting their testimony that they recognized Dupree from surveillance images of the robbery. Moreover, Deputy Navitsky's testimony that she was trained in identification, along with Detective Weissman's testimony that he agreed with Navitsky's identification of Dupree, was highly probative of the identity of the robber, which was the primary issue at trial, as misidentification was Dupree's theory of defense. Put simply, we can find no abuse of discretion in the district court's ruling that the probative value was not substantially outweighed by its potential for unfair prejudice, especially given the court's instruction that the jurors should not speculate as to why law enforcement officers possessed photographs of Dupree.

Next, Dupree argues that his confrontation rights were violated when Detective Weissman testified that Frank LaCosta, a bank employee, had identified Dupree in a photo lineup, in an out-of-court statement. Dupree contends that the admission of this evidence violated the rule of Crawford v. Washington, 541 U.S. 36 (2004), that the Sixth Amendment's guarantee of an accused's right to confront and cross-examine witnesses against him extends only to "testimonial" statements. See also Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006) (reaffirming this

16

rule). According to Dupree, because LaCosta's statement was an out-of-court identification that occurred during a police interview, the statement was testimonial, and he was entitled to confront the witness. See Davis, 126 S. Ct. 2266, 2273-74 (2006) (defining as "testimonial" any statements made to police officers, under circumstances that "objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions.").

We easily resolve this claim because even if the admission of LaCosta's identification was error, it was harmless beyond any reasonable doubt. In United States v. Mills, we held that a Confrontation Clause violation was harmless beyond a reasonable doubt when: (1) the out-of-court witness's testimony was not "vital" to the prosecution, in that the key evidence upon which the conviction was based came from other witnesses; (2) the witness's testimony was mentioned only twice, in passing, in the government's closing argument; (3) the testimony was only cumulative of other testimony; and (4) cross-examination by other defendants provided a forum by which the defense could undermine the testimony. See 138 F.3d 928, 939-40.

Here, even assuming LaCosta's statement was admitted in contravention of Dupree's confrontation rights, the statement was merely cumulative of the

government's overwhelming proof that Dupree was the May 1996 robber, and the statement was mentioned only once throughout the trial. On this record, we readily conclude that any error in the admission of the identification was harmless beyond a reasonable doubt.

Finally, Dupree argues that the district court committed plain error by ordering him to pay $2,200 restitution, because the evidence established that he stole only $2,157. The government concedes error on this point and urges this Court for a limited remand to allow the district court to correct the $43 discrepancy. Accordingly, we vacate the restitution order and remand for the limited purpose of correcting the $43 discrepancy in that order.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART, WITH INSTRUCTIONS**.